## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**MILWAUKEE METROPOLITAN
  SEWAGE DISTRICT,**

              **Plaintiff,**

        **v.**                          **Case No. 05-C-1352**

**SEDGWICK OF ILLINOIS, INC., and
MARSH, INC., and
OWENS GROUP, INC., and
AIG DOMESTIC CLAIMS, INC.,**

              **Defendants,**

**AMERICAN INTERNATIONAL SPECIALTY
  LINES INSURANCE COMPANY, and**

              **Defendant and Third-Party Plaintiff,**

**CRUMP INSURANCE SERVICES OF ILLINOIS, INC., and
CRUMP GROUP, INC.,**

              **Third-Party Defendants.**

---

## DECISION AND ORDER REGARDING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

---

### I. PROCEDURAL HISTORY

On November 23, 2005, Milwaukee Metropolitan Sewage District ("MMSD") filed this action in Milwaukee County Circuit Court against Sedgwick of Illinois, Inc., ("Sedgwick"), Marsh, Inc., ("Marsh"), Owens Group, Inc., ("Owens"), AIG Technical Services, Inc., (which subsequently merged with another entity and is referred to as AIG Domestic Claims, Inc., ("AIG")) in this

litigation, (Docket No. 36 at 2 ¶9; Docket No. 59), and American International Specialty Lines Insurance Company ("AISLIC"), (Docket No. 1 at 7-20.) On December 27, 2005, all defendants moved for removal of this action pursuant to 28 U.S.C. §§ 1441 and 1446 based upon the diversity of the parties and the fact that the amount in controversy exceeds $75,000. (Docket No. 1.)

On February 1, 2006, Owens answered the complaint, (Docket No. 34), and on February 2, 2006, AISLIC, (Docket No. 36), AIG, (Docket No. 36), Sedgwick (Docket No. 38), and Marsh, (Docket No. 38). On February 6, 2006, this case was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. (Docket No. 43.)

On June 1, 2006 AISLIC filed a third-party complaint against Crump Group Inc., ("Crump Group") and Crump Insurance Services of Illinois, Inc., ("Crump Insurance") (referred to here collectively as "Crump"), (Docket No. 57), which Crump answered on July 13, 2006, (Docket No. 72).

On March 8, 2007, this case was referred to Magistrate Judge William E. Callahan for the purpose of mediation. (Docket No. 79.) Mediation was conducted on September 20, 2007 but did not result in a resolution of this case. (Docket No. 93.)

On August 3, 2007, MMSD filed a motion to amend the complaint to add a direct action against third-party defendant Crump, (Docket No. 86), which this court denied on September 14, 2007, (Docket No. 92). On September 27, 2007, MMSD filed a motion for reconsideration, (Docket No. 96), which this court denied on November 6, 2007, (Docket No. 109.)

On December 3, 2007, Owens filed a motion for summary judgment, (Docket No. 115), to which MMSD has responded, (Docket No. 134), and Owens has replied, (Docket No. 157.) Also on December 3, 2007, MMSD filed a motion for summary judgment against AIG, (Docket Nos. 116, 117), to which AIG has replied, (Docket No. 150), and MMSD has replied, (Docket No. 159). The same day, AIG and AISLIC filed a joint motion seeking dismissal of MMSD's complaint and for

2

summary judgment on its third party complaint against Crump, (Docket No. 124, 125). Crump, (Docket No. 140) and MMSD (Docket No. 141), have responded, and AIG and AISLIC have replied, (Docket No. 163). The pleadings on these motions are closed and the matters are ready for resolution. A final pretrial conference is scheduled for October 30, 2008 and a jury trial is scheduled to commence on November 17, 2008.

## II. FACTS

MMSD is a wastewater utility that provides waste water services to twenty-eight municipalities in southeastern Wisconsin. (Docket No. 1 at 10; PPFOF, Docket No 137 at 2, ¶3.) In 1998 and 1999, MMSD implemented a plan aimed at reducing flooding around Lincoln Creek, a tributary of the Milwaukee River. (Docket No. 134 at 2.) Part of this plan included lowering the flood plain between North 35th and 33rd Streets in the City of Milwaukee. (Docket No. 134 at 2.) To complete this part of the plan, MMSD acquired land from Milwaukee County. (Docket No. 134 at 2.)

In 1997, Joseph Spina ("Spina"), an insurance broker with Sedgwick, recommended coverage to MMSD for environmental risks associated with MMSD property. (Docket Nos. 134 at 3, 134-2.) Spina forwarded a quote from AISLIC to MMSD for environmental risk insurance. (Docket No. 134 at 3.) In December of 1998, during the time that MMSD was negotiating with Milwaukee County for the purchase of the Lincoln Creek property, Glinda Loving ("Loving") an employee of MMSD tasked with obtaining the relevant insurance, told Spina that MMSD would purchase environmental risk coverage for the Lincoln Creek property, if it could be obtained, and coverage for several other MMSD properties that Sedgwick had recommended. (Docket No. 134 at 3.)

By way of facsimile dated February 2, 1999, Loving submitted an insurance application that listed five properties, four of which are identified by street addresses and the fifth identified only as

"Lincoln Creek." (Docket No. 146-15.) On March 2, 1999, Crump drafted an insurance binder for five properties, the fifth identified only as "Lincoln Creek." (Docket No. 145-8 at 2.)

In September of 1999, MMSD received an insurance policy from AISLIC for five properties. (Docket No. 134 at 3.) Location 5 under this policy was identified as "4830 North 32nd Street, Milwaukee, WI." (Docket Nos. 134-5, 146-16 at 18.) Loving learned after the relevant claim was filed that this address is for a pump station on part of the Lincoln Creek project. (Docket No. 152-3 at 3.) Loving contacted Barb Piller ("Piller"), who was working with Spina, to confirm that the North 32nd Street property listed in the policy was the Lincoln Creek property. (Docket No. 134 at 4.) At this time, both Piller and Spina were employed by Marsh, which had previously acquired Sedgwick. (Docket No. 134 at 3-4.)

On September 8, 1999 Piller subsequently notified Crump that Location 5 in the policy should read "Lincoln Creek from Silver Springs to River Mile Roads," and thus she requested a policy amendment from Crump. (Docket Nos. 134 at 4, 134-10.) MMSD was not informed that Piller had requested a policy amendment, and MMSD was never informed that the "Lincoln Creek" property, as such, was not listed on the insurance policy. (Docket No. 134 at 4.)

MMSD commenced improvements upon the Lincoln Creek property in November of 1999 and in doing so discovered waste ash, which the Wisconsin Department of Natural Resources ("DNR") determined to be a "special hazard" requiring substantial additional excavation and special disposal. (Docket No. 134 at 5; see also Docket No. 134-8.) In February of 2000, Spina and Piller left Marsh for Owens and in doing so brought with them MMSD's account. (Docket No. 134 at 5.)

The total additional cost for this remediation, as determined by MMSD, was $731,836, (Docket No. 134-3 at 2), and thus at the end of March of 2000, (Docket No. 134-4), Piller filed a claim under the AISLIC policy on behalf of MMSD to AIG. (Docket No. 134 at 5-6.)

4

Piller continued to handle MMSD's claim until it was eventually denied on December 7, 2001 because, in relevant part, the waste ash was not on insured property. (Docket No. 134-5 at 4.) At no point during the claim process did Piller inform MMSD that she had requested but not received an amendment to the policy. The court shall address additional facts, as necessary, below.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

5

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

This case comes before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and thus this court is required to apply state substantive law. <u>Lexington Ins. Co. v. Rugg & Knopp, Inc.</u>, 165 F.3d 1087 (7th Cir. 1999). Wisconsin law applies in the present case, and therefore this court must attempt to predict how the Wisconsin Supreme Court would decide the issues presented here. <u>Id.</u> (citing <u>Allen v. TransAmerica Ins. Co.</u>, 128 F.3d 462, 466 (7th Cir. 1997)). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." <u>Id.</u> "In the absence of Wisconsin authority, [a federal court] may consider decisions from other jurisdictions." <u>Id.</u> (citing <u>Valerio v. Home Ins. Co.</u>, 80 F.3d 226, 228 (7th Cir. 1996)).

## IV. OWENS' MOTION FOR SUMMARY JUDGMENT AGAINST MMSD

Owens seeks summary judgment with respect to MMSD's claim for negligent misrepresentation. (<u>See</u> Amend. Compl. Fourth Cause of Action, Docket No. 1 at 18-20, ¶¶81-94.) Owens argues that it is entitled to summary judgment on this claim because as a matter of law, MMSD is unable to prove the elements of negligent misrepresentation claim under Wisconsin law. Specifically, MMSD is unable to prove that it was damaged by any conduct of Owens because all the relevant conduct occurred prior to Owens' involvement in the present case.

Wisconsin Civil Jury Instruction 2403 sets forth the elements of a negligent misrepresentation claim, in relevant part, as follows:

> To constitute negligent misrepresentation in this case, there are four elements which must be proved by (<u>plaintiff</u>).

> First, that (<u>defendant</u>) made the representation of fact. Representations of fact do not have to be in writing or by word of mouth, but may be by acts or conduct on the part of (<u>defendant</u>), or even by silence if there is a duty to speak. [A duty to

6

speak may arise when information is asked for; or where the circumstances would call for a response in order that the parties may be on equal footing; or where there is a relationship of trust or confidence between the parties.]

                                        * * *

        Secondly, that such representation of fact was untrue.

        Thirdly, that (<u>defendant</u>) was negligent in making these representations. The word "negligence" has the same meaning as the phrase, "failure to exercise ordinary care." A person fails to exercise ordinary care when, without intending to do any wrong, (he) (she) makes a misrepresentation under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such misrepresentation will subject the interests of another person to an unreasonable risk of damage. [A person in a particular business or profession owes a duty to exercise the care that is usually exercised by persons of ordinary intelligence and prudence engaged in a like kind of business or profession.]

        The making of a misrepresentation, even though made with an honest belief in its truth, is negligence if there was a lack of reasonable care in ascertaining the facts [or if it was made without the skill or competence required in a particular business or profession].

        Fourthly, (<u>plaintiff</u>) believed such representation to be true and relied thereon to (his) (her) damage. The question is whether the representations actually misled (<u>plaintiff</u>) and materially affected (his) (her) conduct. In determining whether (<u>plaintiff</u>) actually relied upon the representations, the test is whether (he) (she) would have acted in the absence of the representations. It is not necessary that you find that such reliance was the sole and only motive inducing (him) (her) to enter into the transaction. If the representations were relied upon and constitute a material inducement, that is sufficient.

Owens is a defendant in this case because in early-2000, Spina and Piller left Marsh and began working for Owens. Upon leaving, Spina and Piller took the MMSD account with them, and thus, while employed at Owens, Spina handled the claims process on behalf of MMSD.

The error in the policy's identification of the Lincoln Creek properties was recognized no later than September 8, 1999. Improvements commenced on the Lincoln Creek properties in November of 1999 and soon thereafter, the ash contamination was discovered, and thus MMSD recognized that it had a potential insurance claim. It is undisputed that the potential claim was recognized before Owens ever became involved in this case. (Docket No. 115-2 at 6.)

In the view of the court, these dates, most importantly the date of the discovery of the potential claim, are crucial to MMSD's negligent misrepresentation claim. During this time, Piller and Spina were not yet employed by Owens. Spina and Piller were employed by Owens when a formal claim was submitted and eventually denied, and thus, in a formal sense, as MMSD argues, Spina and Piller were employed by Owens when damage resulted, i.e. the denial of the claim. Notwithstanding, the court finds that, based upon the undisputed facts, denial was simply an inevitable conclusion due to the fact that the property description in the policy remained unamended at the time the contamination was discovered. MMSD's argument that there was a possibility that had Piller more fully communicated with MMSD after it discovered the contaminated property it could have somehow averted the rejection of its claim is unpersuasive. It is unreasonable to expect that an insurance company would reform its policy to include what it believed to be uninsured property after a substantial claim was identified on the relevant property. Such benevolence appears antithetical to the aims of an insurance company. See, e.g., Estate of Logan v. Northwestern Nat'l Casualty Co., 144 Wis. 2d 318, 348, 424 N.W.2d 179, 190 (1988) ("Insurers are not in the business of insuring known breaches, and any interpretation which required them to provide such coverage would be patently unreasonable.").

Therefore, because the court finds that any alleged negligent misrepresentation that resulted in injury occurred prior to Piller and Spina being employed by Owens, MMSD's claim against Owens fails as a matter of law. Thus, the court shall grant Owens' motion for summary judgment, (Docket No. 115), and dismiss Owens as a defendant in this case.

## V. MMSD'S MOTION FOR SUMMARY JUDGMENT ON REFORMATION CLAIM AGAINST AISLIC

MMSD argues that it is entitled to reformation of the insurance policy to include coverage for its costs related to the removal of the waste ash on the Lincoln Creek property because such coverage was never included in the policy as a result of a mistake of the insurance agent. AISLIC

8

responds that reformation is inappropriate because there was no understanding that the Lincoln Creek property would be included on the policy and because Crump was an agent for MMSD, not AISLIC. AISLIC and AIG have filed their own joint motion for summary judgment with respect to MMSD's reformation claim, (see Docket No. 125 at 23-32), which the court shall address here for the sake of clarity.

> The equitable remedy of reformation requires a showing that the instrument fails to express the intent of the parties, either because of the mutual mistake of both parties, or because of the mistake of one party coupled with fraud or inequitable conduct of the other party.

Russ v. Russ, 2007 WI 83, ¶37, 734 N.W.2d 874 (citing Hennig v. Ahearn, 230 Wis. 2d 149, 174, 601 N.W.2d 14 (1999)).

> When a policy of insurance is involved, mutual mistake is proven when the party applying for insurance proves that he made certain statements to the agent concerning the coverage desired, but the policy as issued does not provide the coverage desired. ". . . Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual. . . ."

Trible v. Tower Ins. Co., 43 Wis. 2d 172, 182-83, 168 N.W.2d 148, 154 (1969) (quoting 13 Appleman, Insurance, p. 368, sec. 7609).

**A. Agency**

As a preliminary matter, the parties dispute whether Crump was an agent of AISLIC or MMSD. Because the parties agree that neither MMSD nor Sedgwick had any direct contact with AISLIC, only if Crump was an agent of AISLIC can MMSD and Sedgwick's alleged statements requesting coverage for the Lincoln Creek property be imputed to AISLIC.

AISLIC argues that the court should rely upon the four-part test set forth by the Seventh Circuit in Mizuho Corporate Bank (USA) v. Cory & Assocs., 341 F.3d 644, 653 (7th Cir. 2003). Although Mizuho presents a factually similar situation, that case involved the application of Illinois

law and for this reason is not an appropriate authority to rely upon in resolving the motion presently before this court, which requires the application of Wisconsin law.

Under Wisconsin law, although ordinarily an "agent of an insurance company owes a duty only to the insurance company," Greenberg v. Stewart Title Guar. Co., 171 Wis. 2d 485, 498, 492 N.W.2d 147, 153 (1992), under certain circumstances an intermediary in the negotiation of insurance may owe duties to both the prospective insured and the insurer. Gilbert v. United States Fire Ins. Co., 49 Wis. 2d 193, 199 (1970) (citing John R. Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 70 N. W. 84 (1897); Wisconsin Central Ry. Co. v. Phoenix Ins. Co., 123 Wis. 313, 101 N. W. 703 (1904)). Thus, evidence that Crump undertook certain acts that benefited MMSD, such as obtaining multiple quotes to obtain the lowest rate for the insured, (Docket No. 125 at 31), is not dispositive to the question of whether Crump was acting as AISLIC's agent.

As defined in the Wisconsin Statutes, an intermediary who "[s]olicits, negotiates or places insurance or annuities on behalf of an insurer or a person seeking insurance or annuities; or [a]dvises other persons about insurance needs and coverages," Wis. Stat. § 628.02(1)(a), and does acts on behalf of the insurer beyond merely "collecting premiums or performing other ministerial acts," Wis. Stat. § 628.02(3), is an insurance agent, Wis. Stat. § 628.02(4), subject to certain exceptions, Wis. Stat. § 628.02(1)(b), that no party argues are applicable to the present case.

The undisputed facts demonstrate that Crump's actions were not limited to "collecting premiums or performing other ministerial acts." Certain matters that Crump undertook, such as forwarding the policy from AISLIC to Sedgwick, (see Docket No. 145-10), certainly were ministerial. However, other actions, most notably the issuance of the insurance binder, (see Docket No. 145-8), certainly were not. Thus, under the undisputed facts presented in this case, the court finds that Crump was an insurance agent, as that term is defined in Wis. Stat. § 628.02(4).

Case 2:05-cv-01352-AEG   Filed 04/04/08   Page 10 of 28   Document 176

"Once the insurance company in Wisconsin accepts the application from an independent agent, it is not permitted to deny that the insurance agency was acting as its agent in taking the application." <u>Trible</u>, 43 Wis. 2d at 181, 168 N.W.2d at 153. It is undisputed that AISLIC accepted the application from Crump and issued the relevant insurance policy. Thus, as a matter of law, the court finds that Crump was AISLIC's agent in the relevant transaction.

Additionally, the court finds that Crump's knowledge is imputed to AISLIC under the doctrine of apparent authority. Quoting the Restatement (1st) of Agency, § 8, the Supreme Court of Wisconsin stated:

> Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent.

<u>Harris v. Knutson</u>, 35 Wis. 2d 567, 574, 151 N.W.2d 654, 658 (1967)

The court continued:

> Three elements are necessary to establish apparent agency: (1) Acts by the agent or principal justifying belief in the agency. (2) Knowledge thereof by the party sought to be held . . . . (3) Reliance thereon by the plaintiff, consistent with ordinary care and prudence.

<u>Id.</u> at 575, 151 N.W.2d at 658 (citing <u>Domasek v. Kluck</u>, 113 Wis. 336, 339, 89 N.W. 139, 140 (1902)).

To apply this general rule regarding apparent authority to the context of insurance law, the court in <u>Harris</u> turned to the leading treatises on insurance law. Quoting 16 Appleman, Insurance Law and Practice, p. 95, sec. 8677, the court stated:

> If the insurer actually accepts the application and issues its policy thereon, it is in no position to question the authority of the agent to make the contract or to question the fact that he was the company's agent. Similarly, one procuring the application, collecting premiums, and delivering the policy, apparently with the insurer's knowledge, consent, and authority, must be considered the insurer's agent. And the collection of premiums may preclude the insurer from denying such agency.

<u>Harris</u>, 35 Wis. 2d at 577, 151 N.W.2d at 559.

Finally, the court quoted similar language set forth in 3 Couch, Insurance (2d), p. 481, sec. 26:25:

> [I]f one purporting to act as agent receives an application, accepts the premium, secures and delivers the policy, and does everything necessary to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer.
>
> An implication of the authority arises . . . by the insurer's act in sending a policy to a person for delivery to the insured.

Harris, 35 Wis. 2d at 577, 151 N.W.2d at 559.

From the perspectives of MMSD and Sedgwick, there was no reason to doubt that Crump was acting as AISLIC's agent. Crump received the application, accepted the premium, secured and delivered the policy, and did everything necessary to attachment of the risk. All of these actions were done with the knowledge of AISLIC. Thus, it is the conclusion of the court that, as a matter of law, information communicated to Crump by MMSD or Sedgwick is imputed to AISLIC. Therefore, the court turns to the second step of the analysis, i.e. the question of what information was communicated to Crump.

### B. Reformation

MMSD is entitled to summary judgment on its reformation claim if the undisputed facts demonstrate that (1) MMSD told Crump, AISLIC's agent, that it desired environmental hazard coverage for the Lincoln Creek property, (2) Crump understood that MMSD wanted coverage for the Lincoln Creek property, (3) MMSD relied upon Crump to obtain this coverage, but (4) Crump mistakenly failed to obtain coverage for the Lincoln Creek property. The foregoing elements constitute a mutual mistake. See Trible, 43 Wis. 2d at 182-83, 168 N.W.2d at 154 (quoting 13 Appleman, Insurance, p. 368, sec. 7609).

The undisputed facts clearly establish that MMSD, through its agent Sedgwick, informed Crump that it desired coverage for Lincoln Creek. This is evidenced by the fact that the binder

12

issued by Crump included coverage for "Lincoln Creek." (Docket No. 145-8.) No party presents any evidence to indicate that MMSD intended the term "Lincoln Creek" to mean some limited portion of the Lincoln Creek parcel as opposed to the entire parcel, or to mean just MMSD's nearby 4830 N. 32nd Street property, as the policy later indicated. Rather, the evidence consistently indicates that MMSD desired insurance coverage for the entire parcel it sought to and eventually did acquire from Milwaukee County. (See, e.g., Docket Nos. 117-3; 118-2; 118-3; 146-20; see also 126-3 at 8, 11-12 (Glinda Loving Dep.); 126-4 at 9 (Bob Sander Dep.).)

Similarly, Crump's issuance of the binder for "Lincoln Creek," the deposition of Timothy Turner, the Crump employee tasked with obtaining the relevant coverage, as well as the correspondence Crump received from Sedgwick, all clearly establish that Crump understood that MMSD wanted coverage for the entire Lincoln Creek parcel. (See, e.g., Docket Nos. 117-3; 126-15 at 13; 145-5 (Timothy Turner Dep.); 167-3 at 7 (Timothy Turner Dep.).) Further, it is undisputed that MMSD relied upon Crump to obtain such coverage for the Lincoln Creek parcel.

However, the trouble with Trible's rule from MMSD's perspective comes with respect to the final element of failing to obtain the intended coverage. The undisputed facts demonstrate that the deciding factor was not so much Crump's mistake, but the AIG Environmental's underwriting guidelines. (See Docket No. 126-15 at 2, 4, 5-6.) The guidelines required a more definite description of the property and proof of ownership of the parcel to be insured at the time the application was submitted and the policy was issued. (See, Docket No. 126-15 at 2,4.)

Likely, Crump could have easily obtained a more definite description of the parcel so as to satisfy the underwriting guidelines, but it is unclear whether there was anything Crump could have done to obtain coverage for MMSD under the policy in light of MMSD's lack of ownership in the property. To combat the defendant's arguments regarding lack of ownership, MMSD argues that actual ownership of property is not a prerequisite to demonstrating an insurable interest. However,

13

whether or not something less than actual ownership of property may constitute an insurable interest under Wisconsin law is not the relevant question before this court. The obstacle to MMSD obtaining insurance was not Wisconsin law but rather AIG's underwriting guidelines. Regardless of whether under Wisconsin law MMSD could have obtained environmental risk insurance for the Lincoln Creek property without owning the property, based upon the relevant correspondence in the record, it is clear that AISLIC required proof of ownership prior to issuing a policy. Because MMSD has failed to demonstrate by clear and convincing evidence that Crump failed to take any appropriate steps that would have resulted in MMSD obtaining the coverage it desired in light of MMSD's lack of ownership, MMSD is not entitled to summary judgment on its claim for reformation based upon the rule set forth in <u>Trible</u>.

However, neither are AISLIC and AIG entitled to summary judgment on this claim because they have failed to demonstrate that it is beyond dispute that there was nothing that Crump could have done to obtain the coverage MMSD desired. For example, perhaps Crump might have been able to obtain the coverage MMSD desired under the present policy if it had simply established the effective date of coverage for the Lincoln Creek parcel to coincide with the date MMSD obtained title to the property. Thus, there is a dispute of material of fact that can be resolved only at trial as to the question of whether there was anything that Crump could have done to obtain MMSD the coverage it desired.

Parenthetically, the court notes that although there is evidence in the record that Crump was informed that a contractor's liability policy may be a way for MMSD to obtain coverage for the Lincoln Creek parcel without owning it, (<u>see</u> Docket No. 126-15 at 2), the fact that Crump apparently did not inform MMSD of this option does not demonstrate that Crump made a mistake so as to entitle MMSD to reformation under <u>Trible</u>. This fact suggests that coverage was obtainable

by way of a separate policy; reformation is appropriate only if Crump's mistake resulted in coverage being excluded from the policy that MMSD did obtain.

Further, AISLIC and AIG are not entitled to summary judgment with respect to MMSD's reformation claim because MMSD may be able to demonstrate that it is entitled to reformation on alternative grounds. The rule set forth in <u>Trible</u> arises out of a factual situation in which the action or inaction of the agent resulted in the issuance of a policy different than intended. In <u>Trible</u>, the insured was seeking reformation as a result of what may be referred to as a unilateral error by an insurance agent. <u>See</u>, <u>e.g.</u>, <u>Trinity Evangelical Lutheran Church v. Tower Ins. Co.</u>, 2003 WI 46, ¶40 n.4, 261 Wis. 2d 333, 661 N.W.2d 789; <u>Vandenberg v. Cont'l Ins. Co.</u>, 2001 WI 85, ¶54, 244 Wis. 2d. 802, 628 N.W.2d 876; <u>Gilbert v. United States Fire Ins. Co.</u>, 49 Wis. 2d 193, 204, 181 N.W.2d 527, 533 (1970). The present case may not present a unilateral error, but rather a truly mutual mistake of the parties, i.e. MMSD and Crump, and thus, the standard principles of contract reformation law may apply.

"The general rule is that a contract may be reformed when the 'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'" <u>Vandenberg</u>, 2001 WI 85, ¶50, 244 Wis. 2d. 802, 628 N.W.2d 876 (quoting Rest. 2d Contracts § 155 (1979)). "To win reformation of an insurance contract, the insured must prove that there was a prior oral agreement between the parties which, through mistake or negligence, the written insurance policy does not express, although the written insurance policy was intended to so state." <u>Id.</u> at n.35 (citing <u>International Chiropractors Ins. v. Gonstead</u>, 71 Wis. 2d 524, 528-29, 238 N.W.2d 725 (1976)).

> In the context of insurance contracts, there are special considerations regarding reformation. On the one hand, a policy may not be rewritten to bind the insurer to a risk that it did not contemplate and for which it received no premium. But on the other hand, "in insurance cases less is required to make out a cause of action for reformation than in ordinary contract disputes."

Case 2:05-cv-01352-AEG   Filed 04/04/08   Page 15 of 28   Document 176

Id. at ¶53 (quoting <u>Artmar, Inc. v. United Fire & Cas. Co.</u>, 34 Wis. 2d 181, 186, 148 N.W.2d 641 (1967)) (footnotes omitted).

The facts of this case may present a mistake of thought, i.e. a mistaken understanding of the meaning or effect of a contract provision, namely that the reference to 4830 North 32nd Street encompassed the entire Lincoln Creek property. As AISLIC's agent, a mistake by Crump is imputed to AISLIC, and thus reformation is warranted if MMSD is able to prove that Crump and MMSD both misunderstood the effect of a provision within the insurance policy. Specifically, reformation is appropriate if both MMSD and Crump mistakenly understood the reference to the 4830 North 32nd Street property in the policy to refer to the Lincoln Creek parcel. Whether or not both parties acted with this misunderstanding is a question of fact that precludes summary judgment.

Although there is evidence indicating that Crump was informed that the 4830 North 32nd Street address was not intended to refer to the Lincoln Creek parcel, (<u>see</u> Docket No. 123 at 3, ¶6; 125 at 25), this evidence is insufficient to warrant summary judgment in favor of AISLIC and AIG. In fact, while pointing out the evidence indicating that Crump knew that the Lincoln Creek parcel was not an insured location, AISLIC and AIG also seem to acknowledge that Crump may have misunderstood the meaning of the 4830 North 32nd Street address. (<u>See</u> Docket No. 125 at 25.) Throughout their pleadings, AISLIC and AIG argued that Crump was MMSD's agent. In their brief, they then argue if any mistake occurred it was unilateral on the part of MMSD or its agents, including Crump.  (Docket No. 125 at 25.) By this court rejecting AISLIC and AIG's argument that Crump was exclusively MMSD's agent, but rather concluding that Crump was AISLIC's agent, AISLIC and AIG's acknowledgment that Crump and MMSD could have been acting with the same mistaken understanding becomes an acknowledgment that a mutual mistake warranting reformation may have occurred.

Under this application of reformation law, the absence of ownership does not bar MMSD from obtaining reformation. Reformation is appropriate if both the insured and the agent truly believed that coverage had been obtained for the subject property regardless of whether or not the insured lacked an insurable interest in the property at the time the policy was issued. The fact that MMSD did not own and may not have had an insurable interest in the Lincoln Creek parcel, and thus the parcel may not have been insurable for MMSD under AIG's underwriting guidelines or Wisconsin law, see Wis. Stat. § 631.07(1), does not preclude a finding that reformation is appropriate. Wisconsin law is clear that, although an insurable interest is a prerequisite for coverage, any coverage extended in violation of this statutory requirement remains valid, Wis. Stat. § 631.07(4), i.e. § 631.07(1) may not be invoked by an insurer as a defense to coverage. Further, an insurance policy issued in violation of the insurer's underwriting guidelines is insufficient to render a policy void.

### C. Reformation Based Upon Coverage Granted in Binder

Alternatively, MMSD argues in reply that reformation is appropriate because Lincoln Creek was covered in the binder, but AISLIC did not comply with Wis. Stat. § 631.36(2) when it effectively canceled this coverage by issuing a policy for the 4830 N. 32nd Street property. (Docket No. 159 at 4-9.) Although Civil L.R. 7.1(f) provides that a matter not raised by a movant in an initial brief is ordinarily deemed waived, Alexander v. Unified Solution, 2006 U.S. Dist. LEXIS 51683, 22 fn.1 (E.D. Wis. 2006), the court finds that MMSD has preserved this argument because it also raised this issue in response to AISLIC's own motion for summary judgment, (see Docket No. 141 at 12-16). Thus, AISLIC was provided an appropriate opportunity to address this argument.

MMSD argues that once coverage for the Lincoln Creek parcel was established by the binder, coverage could be withdrawn only in accordance with the cancellation procedures set forth in Wis. Stat. § 631.36(2). AISLIC responds that the binder cannot be a basis for reforming the

policy because (1) AISLIC did not authorize, and in fact, explicitly rejected the terms of the binder, (2) the binder explicitly stated that the coverage was subject to satisfactory review of the completed application, including site addresses, and (3) the binder was no longer in effect once the policy was issued.

Wis. Stat. § 631.36(2)(c) covers the mid-term cancellation of new insurance policies, i.e. policies that have been in effect for less than 60 days, and requires at least 10 days notice prior to termination. In support of its argument that a binder may be terminated only in accordance with Wis. Stat. § 631.36(2), MMSD relies upon Terry v. Mongin Ins. Agency, 105 Wis. 2d 575, 314 N.W.2d 349 (1982).

In Terry, the Wisconsin Supreme Court held that § 631.36(2) applies to insurance binders. Specifically, an automobile insurer could not cancel a binder it had issued to an insured after the insurer learned that she had more traffic violations than she had disclosed in her application.

> The court defined a binder as
>
> a contract of insurance in contemplation of a subsequent and more formal agreement; a binder is a contract for temporary insurance. A binder, although informal and sketchy in comparison to a policy, is issued prior to the issuance of a policy to afford insurance coverage during the interim between the application for and the issuance of a policy. A binder generally continues until a policy is issued, the risk is declined, or the time period agreed upon ends. A binder, even in the absence of express language, is construed as incorporating the terms and conditions of the standard policy used by the insurer or of a particular insurance policy specified by the parties.

Id. at 581, 314 N.W.2d at 352.

The court went on to hold that a binder is a "policy" within the meaning of § 631.36(2), and thus the insurer must comply with § 631.36(2)(c) and provide the insured 10 days in which to obtain alternative coverage, when cancelling a binder. Id. at 582, 314 N.W.2d at 353.

The court found that including binders within the definition of the word "policy," as that word was used in § 631.36(2)(c), was consistent with the legislative intent behind the statute, which the court explained

18

is to provide the insured, in the event of cancellation of insurance coverage prior to the expiration of the agreed upon term, with a reasonable period within which coverage continues. The insured is thus given the opportunity to find another insurer or to take such steps as are required to avoid the possibility of an uninsured loss. The statutory cancellation notice requirements protect both the insured and, in the case of automobile insurance, victims of the insured's negligence. The insured's need that insurance coverage continue for a reasonable period after cancellation within which the insured has an opportunity to obtain other insurance is not diminished by the fact that the insurance coverage is provided by a binder rather than a policy. Interpreting sec. 631.36(2) (c) to apply to binders furthers this purpose of the statute.

Id. at 587, 314 N.W.2d at 355.

The insurance binder in the present case, which, like numerous other exhibits, the parties have unnecessarily filed multiple times with this court, (see Docket Nos. 118-4, 126-14 at 13-15, 145-8, 146-14, 160-2), states: "Binder Period: From 2/25/1999 12:01 A.M. To: 4/25/1999 12:01 A.M. Standard Time at the address of the named insured stated herein. This binder will be terminated upon delivery of formal policy(ies) or Certifcate(s)." (Docket No. 118-4 at 1.) As an insured property, the binder lists "Lincoln Creek." (Docket No. 118-4 at 2.)

Thus, unlike in Terry where coverage was terminated during the binder period and a formal policy was never issued, coverage under the binder in the present case ceased at the end of the "agreed upon term," i.e. delivery of the formal policy. The court does not find any support either in Terry or in the language of the statute for the conclusion that an insurer must comply with §631.36(2)(c) whenever, after undertaking a more complete and formal review of the risk, issues a policy where the coverages do not entirely coincide with those set forth in the binder. Such a holding would undermine the rationale for binders, which is, in part, to provide an insured with coverage for a limited time while the insurer more thoroughly investigates the risk prior to issuing a formal policy. This conclusion is entirely consistent with the Wisconsin Supreme Court's interpretation of the purpose behind § 631.36(2)(c), because, unlike the facts presented in Terry, in this case, the insured was not left without coverage prior to the expiration of the agreed upon term.

Therefore, the court must deny MMSD's motion for summary judgment with respect to its first cause of action for reformation of the insurance policy, (Docket No. 116), and deny AISLIC and AIG's opposing motion for summary judgment, (Docket No. 124), with respect to this claim. MMSD may be entitled to reformation if it is able to demonstrate to the finder of fact that it and Crump both misunderstood the policy's reference to 4830 North 32nd Street to be a reference to the Lincoln Creek parcel.

## VI. AISLIC and AIG's MOTION FOR SUMMARY JUDGMENT

### A. MMSD's Breach of Contract Claim

AISLIC and AIG argue that MMSD's breach of contract claim should be summarily denied because the insurance policy is clear that 4830 North 32nd Street is an insured location and it is undisputed that 4830 North 32nd Street is not the Lincoln Creek parcel. Although the binder referred to Lincoln Creek, AISLIC and AIG argue that the formal policy superseded the binder, and cite Terry v. Mongin Ins. Agency, 105 Wis. 2d 575, 314 N.W.2d 349 (1982), in support.

MMSD responds that under Wisconsin law, the policy does not supersede the binder, and that all parties understood that the Lincoln Creek parcel was insured by the AISLIC policy.

Even if this court were to accept as true MMSD's argument that all parties understood the 4830 North 32nd Street address to refer to the Lincoln Creek parcel, such a mutual mistake could, at most, form the basis for a reformation cause of action. Alternatively, it appears that MMSD is attempting to make a promissory estoppel argument, but, as will be discussed, such an argument is inapplicable when a party seeks to expand coverage beyond that clearly established in the policy.

The court has also previously addressed, in large part, MMSD's remaining argument that the binder was not superseded by the policy. As this court quoted above, the Wisconsin Supreme Court has defined a binder as

> a contract of insurance in contemplation of a subsequent and more formal agreement; a binder is a contract for temporary insurance. A binder, although informal and

sketchy in comparison to a policy, is issued prior to the issuance of a policy to afford insurance coverage during the interim between the application for and the issuance of a policy. A binder generally continues until a policy is issued, the risk is declined, or the time period agreed upon ends. A binder, even in the absence of express language, is construed as incorporating the terms and conditions of the standard policy used by the insurer or of a particular insurance policy specified by the parties.

Terry, 105 Wis. 2d at 581, 314 N.W.2d at 352.

Although MMSD is correct that the Wisconsin Supreme Court did not explicitly hold in Terry that a formal policy supersedes a binder, the court finds that in light of the Wisconsin Supreme Court's definition of a binder, the issuance of the formal policy superseded the binder in the present case.

"[A] binder is a contract for temporary insurance . . . that generally continues until a policy is issued." Id. Whether or not a formal policy will always supersede a binder when the binder does not explicitly state that it shall be terminated upon the issuance of a formal policy is a question not presented in this case. Rather, in the present case, the binder explicitly stated that it would terminate upon the issuance of the binder, and thus its terms and coverages were without effect once the formal policy was issued. Additionally and alternatively, the binder stated that it would terminate on April 25, 1999, which was long before MMSD's claim and, in fact, before MMSD even acquired the Lincoln Creek parcel. Finally, as explained above, AISLIC was not required to comply with Wis. Stat. § 631.36(2)(c) when it issued a policy that did not entirely coincide with the coverages set forth in the binder.

Therefore, AISLIC did not breach the terms of the binder when it refused to cover MMSD's claim because the binder was not in effect at the time of the claim. Further, AISLIC did not breach the terms of the policy because, as this court stated above with respect to MMSD's promissory estoppel claim, the relevant policy is clear—4830 North 32nd Street is an insured location. It is undisputed that 4830 North 32nd Street is not the Lincoln Creek parcel. Therefore, MMSD's breach

Case 2:05-cv-01352-AEG   Filed 04/04/08   Page 21 of 28   Document 176

of contract claim, (Docket No. 1 at 15-17, ¶¶56-67), must fail, and the court shall grant AISLIC and AIG's motion for summary judgment with respect to this claim.

### B. MMSD's Promissory Estoppel Claim

As stated by the Wisconsin Supreme Court, the doctrine of promissory estoppel is defined as "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Ahnapee & W. R. Co. v. Challoner, 34 Wis. 2d 134, 144-145, 148 N.W.2d 646, 651 (1967) (quoting Hoffman v. Red Owl Stores, Inc., 26 Wis. 2d 683, 694, 133 N. W.2d 267 (1965) (in turn quoting Rest. 1 Contracts, § 90)).

However, under Wisconsin law, the doctrine of promissory estoppel cannot be relied upon to expand coverage beyond that set forth in an insurance contract. International Chiropractors Ins. Co. v. Gonstead, 71 Wis. 2d 524, 528, 238 N.W.2d 725, 728 (1976) ("The Wisconsin rule is, as stated many times, that the doctrine of estoppel cannot be used to enlarge the coverage of an insurance policy.") (citing Madgett v. Monroe County Mut. Tornado Ins. Co., 46 Wis. 2d 708, 710, 711, 176 N.W. 2d 314 (1970); Ahnapee & Western Ry. v. Challoner, 34 Wis. 2d 134, 142, 148 N.W. 2d 646 (1967); Artmar, Inc. v. United Fire & Casualty Co., 34 Wis. 2d 181, 186, 148 N.W. 2d 641, 151 N.W. 2d 289 (1967)); see also Kamikawa v. Keskinen, 44 Wis. 2d 705, 710, 172 N.W.2d 24, 27 (1969).

MMSD does not dispute that the doctrine of promissory estoppel may not be used to expand insurance coverage. Rather, MMSD submits that the doctrine of promissory estoppel remains applicable in the present case because rather than expanding coverage, MMSD is simply seeking to utilize the doctrine as a means to obtain the coverage that it reasonably expected to receive and relied upon, i.e. that the address listed as the fifth insured location in the policy, 4830 North 32nd

Street, corresponded with the fifth insured location identified on the binder, Lincoln Creek. MMSD points out that at no point did it utilize the 4830 North 32nd Street address or request coverage for this property. Thus, as argued by MMSD, when this address appeared in place of "Lincoln Creek" on the final policy, it was reasonable to assume that the insurer intended this address to apply to the Lincoln Creek parcel. In reliance upon this belief, MMSD proceeded to purchase the Lincoln Creek parcel and undertake its flood remediation project.

"When the terms of an insurance policy are plain on their face the policy should not be rewritten by courts to bind the insurer to a risk it was unwilling to assume and for which it was not paid." International Chiropractors Ins. Co., 71 Wis. 2d at 527, 238 N.W.2d at 727. The issued policy is clear—4830 North 32nd Street is an insured location. It is undisputed that 4830 North 32nd Street is not the Lincoln Creek parcel. The record is similarly clear that AISLIC was unwilling to assume the risk for a property identified only as "Lincoln Creek." Thus, in seeking to obtain coverage by way of promissory estoppel, MMSD is attempting to obtain coverage beyond that set forth in the policy. As explained above, Wisconsin law is clear that such expansion of coverage is not available by way of promissory estoppel. Under Wisconsin law, an insured's remedy when it does not receive the coverage it believed it had bargained for is by way of a cause of action for reformation or negligence, not promissory estoppel. Therefore, the court must grant AISLIC and AIG's motion for summary judgment with respect to this claim and dismiss MMSD's third cause of action for promissory estoppel, (Docket No. 1 at 17-18, ¶¶68-80).

### C. Exclusion Based Upon Known Loss Doctrine / Policy Exclusions

AISLIC argues that whether or not MMSD is entitled to reformation or relief under some other theory is irrelevant because MMSD was not entitled to coverage under the policy due to the known loss doctrine, see Logan, 144 Wis. 2d at 348, 424 N.W.2d at 190, or the prior knowledge exclusion in the policy, (see Docket No. 118-9 at 10, ¶K).

The policy excludes coverage

arising from Pollution Conditions existing prior to the inception date of this Policy and not disclosed in the application for this Policy, if any Responsible Insured knew or reasonably could have expected that such Pollution Conditions could give rise to Clean-Up Costs, interruption of the Insured's business, or a Claim under this Policy.

(Docket No. 118-9 at 10, ¶K.) A "Responsible Insured" is defined as "any employee of the Named Insured responsible for environmental affairs, control or compliance, or any manager, supervisor, officer, director or partner of the Named Insured." (Docket No. 118-9 at 14, ¶W.)

AISLIC states "Mr. Sander testified that MMSD knew there was ash or a pollutant on 'Lincoln Creek' before MMSD obtained coverage in this case." (Docket No. 125 at 18.) In support, AISLIC points to the deposition of Bob Sander ("Sander") where he is asked, "Do you know if the District knew ash existed on the site before coverage was obtained?" (Docket No. 126-4 at 8.) Sander responded, following an objection by his attorney that the question had been asked and answered, "Yes, the District knew that there was ash or there was a pollutant." (Docket No. 126-4 at 8.) As the supervisor of risk management, which includes acting as Loving's supervisor, (Docket No. 126-4 at 2-3), it is undisputed that Sander is a "Responsible Insured" as that term is defined in the policy. Thus, AISLIC argues that because Sander admitted knowing of the ash on the Lincoln Creek property and this information was not disclosed in MMSD's application, regardless of all other argument, the cleanup costs related to the waste ash are not covered under the policy.

MMSD responds that AISLIC has taken this isolated statement of Sander out of context and ignored the statements of other MMSD employees. (Docket No. 141 at 5.) MMSD has submitted an affidavit of Sander, (Docket No. 148), wherein Sander avers he misunderstood the relevant deposition question, (Docket No. 148 at 2, ¶6), and that he had no knowledge of waste ash on the Lincoln Creek property until after November 9, 1999 when MMSD was filing its present claim, (Docket No. 148 at 2 ¶3). Further, MMSD points to Sander's subsequent deposition testimony wherein he testified that he did not become aware of the waste ash on the property until around the

24

time the present claim was filed. (Docket No. 147-4 at 2.) AISLIC replies that Sander's first statement is dispositive, and therefore summary judgment is appropriate. (Docket No. 163 at 7-8.)

The court disagrees with AISLIC that Sander's statement is dispositive. Whether or not Sander was aware of the ash prior to the application for the policy or whether he was mistaken when he gave the relevant answer in his deposition is a dispute that involves credibility determinations. As such, summary judgment is not appropriate. Therefore, the court shall deny AISLIC's motion for summary judgment in this regard.

### D. AISLIC's Motion for Summary Judgment Against Crump

AISLIC argues that it is entitled to summary judgment on its claim against Crump on the basis that Crump exceeded its authority. (Docket No. 125 at 32.) Specifically, AISLIC argues that because it clearly told Crump that it would not insure the Lincoln Creek property based upon the information it was provided and that it told Crump that the binder was unacceptable. AISLIC's argument in this regard is poorly developed and devoid of citation to legal authority.

The court has rejected the argument that MMSD is entitled to coverage because the binder established coverage beyond that set forth in the policy. Thus, AISLIC's argument that Crump is liable to AISLIC for Crump's issuance of a binder that extended coverage in excess of what AISLIC agreed to provide is moot.

As for the argument that Crump somehow exceeded its authority by extending coverage under the policy by failing to understand AISLIC's statements that it would not insure Lincoln Creek, the court finds that any argument that that Crump exceeded its authority in this regard is subsumed into the reformation analysis. As explained above, this analysis requires the resolution of disputes of material fact, and thus summary judgment is inappropriate. A finding that Crump mistakenly believed that 4830 North 32nd Street referred to the Lincoln Creek parcel necessarily precludes a finding that Crump was told and understood that AISLIC would not insure the Lincoln

Case 2:05-cv-01352-AEG   Filed 04/04/08   Page 25 of 28   Document 176

Creek parcel, and vice versa. Therefore, AISLIC's motion for summary judgment on its claim against Crump shall be denied.

### E. AIG's Motion for Summary Judgment

AIG argues MMSD's claims against it should be summarily denied because it merely handled the claim for AISLIC and did not contract with MMSD or make any promises regarding coverage to MMSD. (Docket No. 125 at 35-36.) MMSD responds that summary judgment against AIG is inappropriate because as AISLIC's claims handler, it made decisions regarding coverage. (Docket No. 141 at 28.) Because MMSD contends that there was coverage under the policy for the Lincoln Creek property, MMSD argues that AIG's denial cannot be sustained. (Docket No. 141 at 28.)

The court finds that in light of the above discussion, AIG's argument is moot, and AIG shall be dismissed as a defendant in this case on account of the fact that all of MMSD's claims against AIG have been summarily denied. AIG is named only in MMSD's breach of contract, (Compl. Count 2, Docket No. 1 at 16), and promissory estoppel (Compl. Count 3, Docket No. 1 at 17), claims. (Confusingly, MMSD refers to AISLIC as "AIG" in its complaint and refers to the party this court refers to as AIG as "AIG Technical Services." (See Docket No. 1 at 10, ¶¶8-9.)) MMSD's only remaining claims are for reformation against AISLIC, (Docket No. 1 at 14), and for negligent misrepresentation against Sedgwick and Marsh, (Docket No. 1 at 18).

### F. Damages

AISLIC argues that damages should be limited to $305,541 because any excess amounts were not incurred solely because of the discovery of the waste ash during the policy period. (Docket No. 125 at 33-35.) Specifically, AISLIC argues that excess amounts were necessary expenses related to MMSD's planned flood plain lowering project. (Docket No. 125 at 32.) MMSD responds that the issue of damages is a question of fact that can be resolved only at trial. (Docket No. 141 at

27.) AISLIC replies that MMSD has not disputed AISLIC's damages calculations and therefore summary judgment is appropriate. (Docket No. 163 at 19.)

MMSD has submitted evidence to support its demand for $631,835, (Docket Nos. 146-18; 147-5 at 5-6), and therefore, there exists a dispute of material fact that precludes summary judgment.

## VII. CONCLUSION

Based upon the foregoing, the court shall grant defendant Owens' motion for summary judgment, (Docket No. 115), and therefore Owens shall be dismissed as a defendant in this case. Further, this court shall deny MMSD's motion for summary judgment with respect to its reformation claim. (Docket No. 116.) Finally, this court shall grant in part and deny in part AIG and AISLIC's motion for summary judgment. (Docket No. 124.) The court shall deny AISLIC and AIG's motion with respect to MMSD's reformation claim, AISLIC's argument that MMSD's claim is barred by the known loss doctrine or exclusions contained in the policy, that damages are limited to roughly $305,000, and AISLIC's claim against Crump. The court shall grant AISLIC and AIG's motion for summary judgment with respect to MMSD's promissory estoppel and breach of contract claims. Therefore, AIG shall be dismissed as a defendant in this action. The only causes of action remaining for trial are MMSD's claim are for reformation against AISLIC, (Docket No. 1 at 14), MMSD's claim for negligent misrepresentation against Sedgwick and Marsh, (Docket No. 1 at 18), and AISLIC's third-party breach of duty claim against Crump, (Docket No. 57 at 5). Although Crump states in its response that Sedgwick and Marsh are no longer parties in this action, (Docket No. 140 at 2), this is not indicated in filings received by the court. **This court's October 11, 2007 scheduling order, (Docket No. 105), remains in effect**.

**IT IS THEREFORE ORDERED** that Owens' motion for summary judgment, (Docket No. 115), is **granted**. Owens is hereby dismissed as a defendant in this case.

**IT IS FURTHER ORDERED** that MMSD's motion for summary judgment with respect to its reformation claim, (Docket No. 116), is **denied**.

**IT IS FURTHER ORDERED** that AIG and AISLIC's motion for summary judgment, (Docket No. 124), is **granted in part and denied in part**. AISLIC and AIG's motion for summary judgment is denied with respect to MMSD's reformation claim; denied with respect to AISLIC's affirmative defense that MMSD's claims are barred by the known loss doctrine or exclusions contained in the policy; denied with respect to AISLIC's position regarding limitations on damages; and denied with respect to AISLIC's claim against Crump. AISLIC and AIG's motion is granted with respect to MMSD's breach of contract claim (Amed. Compl., Second Cause of Action, Docket No. 1 at 15-17, ¶¶56-67); and granted with respect to MMSD's promissory estoppel claim (Amed. Compl., Third Cause of Action, Docket No. 1 at 17-18, ¶¶68-80). Therefore, AIG is hereby dismissed as a defendant in this case.

Dated at Milwaukee, Wisconsin this 4th day of April 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
