# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**MILWAUKEE METROPOLITAN SEWAGE DISTRICT,**

       **Plaintiff,**

    **v.**                                    **Case No. 05-CV-1352**

**AMERICAN INTERNATIONAL SPECIALTY LINES**
    **INSURANCE COMPANY**

        **Defendant / Third Party Plaintiff,**

    **v.**

**CRUMP GROUP INC. and**
**CRUMP INSURANCE SERVICES OF ILLINOIS, INC.,**

        **Third Party Defendants.**

---

## DECISION AND ORDER FOLLOWING TRIAL

---

On January 5, 2009, a trial commenced in this matter before an advisory jury. After more than a week of trial, the jury returned the following verdict:

> **Question 1:** Prior to the inception date of the insurance policy, did any employee who was responsible for environmental affairs, control or compliance, or any manager, supervisor, officer, director, or partner of MMSD know or reasonably could have expected that there existed a pollution condition that could give rise to clean-up costs, interruption of MMSD's business, or a claim under the insurance policy, that was not disclosed in the application for the insurance policy?
>
> YES: _____                                NO:___X___
>
> *Proceed to Question 2.*

---

Case 2:05-cv-01352-AEG   Filed 01/20/09   Page 1 of 19   Document 282

**Question 2**: Did MMSD's agent, Sedgwick / Marsh, inform Crump, AISLIC's agent, that MMSD desired environmental hazard coverage for the "Milwaukee County parcel?"

YES: ___X___                              NO:_____

*If "YES," then proceed to Question 3. If "NO," then proceed to Question 6.*

**Question 3**: Did Crump understand that MMSD wanted environmental hazard coverage for the "Milwaukee County parcel?"

YES: ___X___                              NO:_____

*If "YES," then proceed to Question 4. If "NO," then proceed to Question 6.*

**Question 4**: Did MMSD's agent Sedgwick / Marsh reasonably rely upon Crump to obtain environmental hazard coverage for the "Milwaukee County parcel?"

YES: ___X___                              NO:_____

*If "YES," then proceed to Question 5A. If "NO," then proceed to Question 6.*

**Question 5A**: Was the failure to obtain environmental hazard coverage for the "Milwaukee County parcel" the result of a mistake by Crump?

YES: ___X___                              NO:_____

*Proceed to Question 5B.*

**Question 5B**: Was the failure to obtain environmental hazard coverage for the "Milwaukee County parcel" the result of a mistake by AISLIC?

YES: _____                             NO:___X___

*Proceed to Question 6.*

**Question 6**: Did MMSD and its agent Sedgwick / Marsh reasonably believe that AISLIC's policy provided environmental hazard coverage for the "Milwaukee County parcel?"

YES: _____X_____                                          NO:_____

*If "YES," then proceed to Question 7. If "NO," then proceed to Question 8.*

**Question 7**: Did Crump reasonably believe that AISLIC's policy provided environmental hazard coverage for the "Milwaukee County parcel?"

YES: _____                                          NO:_____X_____

*Proceed to Question 8.*

**Question 8**: *Do not answer Questions 8 and 9 unless the answer to Question 5A was "Yes." If the answer to Question 5A was "No," or you were otherwise not required to answer Question 5A, proceed to Question 10.* Was MMSD's or its agent Sedgwick / Marsh's reliance upon Crump to obtain environmental hazard coverage for the "Milwaukee County parcel" the result of an action of Crump that was beyond the scope of its authority as AISLIC's agent?

YES: _____                                          NO:_____X_____

*Proceed to Question 9.*

**Question 9**: Was MMSD's or its agent Sedgwick / Marsh's reliance upon Crump to obtain environmental hazard coverage for the "Milwaukee County parcel" the result of Crump failing to exercise ordinary care in its discharge of its duties as AISLIC's agent?

YES: _____X_____                                          NO:_____

*Proceed to Question 10.*

**Question 10**: *Do not answer Questions 10 and 11 unless the answer to Question 7 was "Yes." If the answer to Question 7 was "No," proceed to Question 12.* Was MMSD's belief that AISLIC's policy provided environmental hazard coverage for the "Milwaukee County parcel" the result of an action of Crump that was beyond the scope of its authority as AISLIC's agent?

YES: _____                    NO: _____

*Proceed to Question 11.*

**Question 11**: Was MMSD's belief that AISLIC's policy provided environmental hazard coverage for the "Milwaukee County parcel" the result of Crump failing to exercise ordinary care in its discharge of its duties as AISLIC's agent?

YES: _____                    NO: _____

*Proceed to Question 12.*

**Question 12**: What amount of clean-up costs did MMSD incur as a result of the discovery of the pollution condition on the "Milwaukee County parcel?"

$__404,148.51___

The court now, in accordance with Federal Rule of Civil Procedure 52, and in consideration of the evidence adduced at trial, the arguments of the parties, and the jury's verdict, makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

- MMSD proved by clear and convincing evidence that MMSD's agent, Sedgwick / Marsh, informed Crump, AISLIC's agent, that MMSD desired environmental hazard coverage for the "Milwaukee County parcel," also referred to here interchangeably as "the Lincoln Creek parcel."

- MMSD proved by clear and convincing evidence that Crump understood that MMSD wanted environmental hazard coverage for the "Milwaukee County parcel."

- MMSD proved by clear and convincing evidence that MMSD's agent Sedgwick / Marsh reasonably relied upon Crump to obtain environmental hazard coverage for the "Milwaukee County parcel."

- MMSD proved by clear and convincing evidence that the failure to obtain environmental hazard coverage for the "Milwaukee County parcel" was the result of a mistake by Crump.

4

- MMSD failed to prove by clear and convincing evidence that the failure to obtain environmental hazard coverage for the "Milwaukee County parcel" was the result of a mistake by AISLIC.

- MMSD proved by clear and convincing evidence that MMSD and its agent Sedgwick / Marsh reasonably believed that AISLIC's policy provided environmental hazard coverage for the "Milwaukee County parcel."

- MMSD failed to prove by clear and convincing evidence that Crump reasonably believed that AISLIC's policy provided environmental hazard coverage for the "Milwaukee County parcel."

## CONCLUSIONS OF LAW

- MMSD is entitled to reform the relevant insurance policy to provide for environmental hazard liability coverage for the parcel of property from Milwaukee County to complete its Lincoln Creek flood plain lowering project.

- AISLIC is entitled to indemnification by its agent Crump.

## ANALYSIS

MMSD seeks to reform the environmental liability insurance policy to include the parcel it purchased from Milwaukee County, referred to here as "the Lincoln Creek parcel." Under Wisconsin law, there are two ways a party may reform an insurance policy.

As the Wisconsin Supreme Court set forth in Trible v. Tower Ins. Co., 43 Wis. 2d 172, 182-83, 168 N.W.2d 148, 154 (1969), the would-be insured must prove that it informed the insurance agent that it desired the coverage, the agent understood the would-be insured's wishes, the would-be insured relied upon the agent to obtain the coverage requested, but the agent mistakenly failed to obtain the coverage requested, reformation is appropriate. The Trible rule permits reformation under instances of essentially unilateral error by an insurance agent. See, e.g., Trinity Evangelical Lutheran Church v. Tower Ins. Co., 2003 WI 46, ¶40 n.4, 261 Wis. 2d 333, 661 N.W.2d 789; Vandenberg v. Cont'l Ins. Co., 2001 WI 85, ¶54, 244 Wis. 2d. 802, 628 N.W.2d 876; Gilbert v. United States Fire Ins. Co., 49 Wis. 2d 193, 204, 181 N.W.2d 527, 533 (1970).

If there is a truly mutual mistake, a would-be insured may also be able to obtain reformation "when the 'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'" *Vandenberg*, 2001 WI 85, ¶50, 244 Wis. 2d. 802, 628 N.W.2d 876 (quoting Rest. 2d Contracts § 155 (1979)). "To win reformation of an insurance contract, the insured must prove that there was a prior oral agreement between the parties which, through mistake or negligence, the written insurance policy does not express, although the written insurance policy was intended to so state." *Id.* at n.35 (citing *International Chiropractors Ins. v. Gonstead*, 71 Wis. 2d 524, 528-29, 238 N.W.2d 725 (1976)). In the context of insurance contracts, there are special considerations regarding reformation.

> On the one hand, a policy may not be rewritten to bind the insurer to a risk that it did not contemplate and for which it received no premium. But on the other hand, "in insurance cases less is required to make out a cause of action for reformation than in ordinary contract disputes."

*Id.* at ¶53 (quoting *Artmar, Inc. v. United Fire & Cas. Co.*, 34 Wis. 2d 181, 186, 148 N.W.2d 641 (1967)) (footnotes omitted).

Under either theory, the burden is on the party seeking reformation to prove all elements of its claim by clear and convincing evidence. *See, e.g., Jeske v. General Acci. Fire & Life Assurance Corp.*, 1 Wis. 2d 70, 79, 83 N.W.2d 167, 172 (1957). Further, unreasonable or negligent conduct by the party seeking reformation will preclude that party from obtaining reformation. *Cf. Journal Co. v. General Acc. Fire & Life Assurance Corp.*, 188 Wis. 140, 149, 205 N.W. 800, 803 (1925); *Lenz Sales & Serv., Inc. v. Wilson Mut. Ins. Co.*, 175 Wis. 2d 249, 258, 499 N.W.2d 229, 232 (Ct. App. 1993).

### Reformation Under **Trible**

It is essentially undisputed that MMSD, through its agent Sedgwick / Marsh, informed Crump, AISLIC's agent, that it desired environmental hazard coverage for the parcel of land

6

MMSD planned to purchase from Milwaukee County. Although Crump presented the argument that the lack of a sufficient description of this parcel precludes an answer in favor of MMSD on this element, the court disagrees. As the court interprets this element of a reformation claim, the proponent must satisfy a very low burden on this point. This element simply eliminates any notion that an insurer or its agent must be a mind reader or speculate as to the insurance needs of its insured. See Nelson v. Davidson, 155 Wis. 2d 674, 683-84, 456 N.W.2d 343, 346 (Wis. 1990). Thus, reformation requires that the prospective insured request the coverage it now seeks to reform the policy to include. The fact that all parties utilized a colloquial description at this early stage of the coverage process is not fatal to MMSD's reformation claim.

Further, the court concludes that MMSD has proven by clear and convincing evidence that Crump understood that MMSD wanted environmental hazard coverage for the parcel it referred to as the Lincoln Creek parcel. Again, although the court agrees that during the insurance application process Crump never understood the precise metes and bounds of the Lincoln Creek parcel, under the circumstances of this case, it was not required to do so. The evidence, most significantly the fact that Crump unilaterally added "Lincoln Creek" to the binder, (see Ex. 30B), but also other correspondence from Crump, (see, e.g., Ex. 23), clearly evidences Crump understood MMSD's desire to obtain coverage for this parcel.

MMSD has also demonstrated by clear and convincing evidence that its agent, Sedgwick / Marsh, reasonably relied upon Crump to obtain the environmental hazard liability coverage MMSD requested for the Lincoln Creek parcel. Although both Crump and Sedgwick / Marsh were experienced insurance agents, Crump was the expert when it came to environmental hazard liability coverage. It was because of Crump's superior knowledge and expertise that Sedgwick / Marsh called upon Crump.

Crump recognized from the outset that there may be a potential concern as to whether or not there was sufficient information to permit an underwriter to bind coverage. (See Ex. 4 (Letter from Barbara Piller of Sedgwick / Marsh to Tim Turner of Crump asking, "Is there enough information included for an underwriter to determine whether he/she will provide coverage for the property?").) At no point did Crump ever inform Sedgwick / Marsh that additional information was needed before coverage could be bound. It was not until March 12, 1999 that Crump contacted Sedgwick / Marsh to inquire, "Can we use an address for their property on the creek?" (Ex. 43.) Throughout the process, the respective agents continued to discuss coverage for simply "Lincoln Creek." Having never received any direct statement that "Lincoln Creek" was not and would not be a covered property, and instead receiving repeated assurances that the coverage included "Lincoln Creek," (see, e.g., Exs. 22, 30B), Sedgwick / Marsh's reliance upon Crump to take whatever steps were necessary to obtain the coverage that MMSD sought was entirely reasonable.

With respect to the final element of a reformation claim under Trible, the court finds that MMSD proved by clear and convincing evidence that the failure to obtain environmental hazard coverage for the Lincoln Creek parcel was the result of a mistake by Crump. Although the court observed at the summary judgment phase of this case that it might not have been Crump's mistake but rather AISLIC's underwriting guidelines that resulted in the absence of coverage, and thus a trial was necessary to determine if there was anything else Crump could have done to obtain coverage, (see Docket No. 176 at 14), having now heard all the evidence in this case, the court finds that its prior comments are not supported by the evidence. The evidence does not demonstrate that AISLIC's underwriting guidelines are hard-and-fast rules; rather, the evidence indicates these guidelines are adjustable at the discretion of the underwriter. For example, Matt Henry unilaterally chose to add 4830 N. 32nd Street as a "freebie" on the policy without requiring any of the usual underwriting information, such as an on-site inspection or a substitute telephone survey. He never

even sought to confirm that the building located at 4830 N. 32nd Street was a waste-water treatment facility (see, Ex. 8.); it was not. With such discretion, it is now clear from the evidence that AISLIC's underwriting guidelines did not prevent or prohibit coverage. However, the evidence establishes that as a result of Crump's mistakes, Henry was not called upon to exercise his discretion in regard to the parcel. The evidence presented at trial clearly demonstrated that the ball was passed to Crump, and Crump dropped it.

AISLIC repeatedly asked Crump to provide additional information, such as an address for the parcel. (See, e.g., Exs. 27, 29, 34A.) But when Crump finally inquired of Sedgwick / Marsh about an address, it was only after the policy was issued. And despite being told by AISLIC that the policy did not cover Lincoln Creek and instead covered a separate location of 4830 N. 32nd Street, (see Ex. 42A), Crump asked simply, "Can we use an address for their property on the creek?" (Ex. 43). Such an equivocal inquiry hardly conveys the gravity of the situation, i.e. MMSD will not have coverage unless AISLIC gets a more specific description of the property.

Crump knew that AISLIC's refusal to insure the property was due to an absence of an appropriate address or other property description. As Tim Turner testified, he understood that Crump would insure the property as soon as it had an appropriate description of the property, and thus he chose to include it on the binder.

Knowing that it was the absence of a specific address or property description was the obstacle to AISLIC insuring the property, it was incumbent upon Crump to either obtain that information or to communicate to Sedgwick / Marsh in no uncertain terms that coverage was dependent upon AISLIC receiving this information and thus it would be up to Sedgwick / Marsh to obtain this information. Crump did neither. Although Tim Turner testified that he asked Sedgwick / Marsh many times for additional information, the exhibits received by the court fail to bear out this assertion, and therefore the court does not find this statement to be credible. Thus, the court

9

concludes that MMSD has proven by clear and convincing evidence that it was Crump's mistake that resulted in the absence of coverage for the Lincoln Creek parcel.

Accordingly, having proven all elements of a reformation claim under <u>Trible</u> by clear and convincing evidence, MMSD is entitled to reform the relevant insurance policy to include coverage for the Lincoln Creek parcel.

### Reformation Due to Mutual Mistake

Having found MMSD is entitled to reformation under <u>Trible</u>, the court need not discuss the alternative means by which MMSD may obtain reformation. Nonetheless, for the sake of completeness, the court shall briefly discuss whether MMSD is entitled to reformation based upon a mutual mistake of the parties.

The evidence clearly demonstrates that MMSD believed that it had obtained coverage for the Lincoln Creek parcel. There is no evidence that before it submitted its claim it was ever told that it did not have coverage for this parcel, and all of its actions were entirely consistent with a belief that insurance coverage had been obtained.

Utilizing the analogy frequently discussed at trial, if a prospective insured calls an insurance agent asking for insurance for his "red car," such a colloquial description surely will not satisfy insurance industry norms. However, if the insured is never asked to provide a more definite description of his red car and then receives an insurance binder that lists his "red car," and subsequently receives an insurance policy on which, in place of his "red car" he finds a vehicle identification number, it would be reasonable for the insured to assume that the agent, through his own methods, obtained a vehicle identification number for his red car and that the policy provides coverage for his "red car." In effect, this is what happened to MMSD.

Although MMSD is comparatively more sophisticated than the ordinary insured, as is demonstrated by the fact that it has employees whose sole duties are managing its risk, it

nonetheless reasonably relied upon the expertise of its broker to obtain the coverage it desired. MMSD's knowledge was particularly limited when it came to environmental hazard liability coverage, the relevant policy being apparently MMSD's first experience with that type of coverage. MMSD exercised reasonable care in that it provided the information its agent requested, read the policy, noticed that the identity of one of the covered properties had changed since the binder, inquired of its agent as to whether its policy provided coverage for the Lincoln Creek parcel, and when its agent did not respond, reasonably assumed that the matter had been appropriately resolved.

Certainly, MMSD might have avoided its misunderstanding by following up with its agent, or providing a more complete application rather that simply requesting the insurer to contact MMSD if there were any questions, but the court is unable to conclude that MMSD's actions were unreasonable. MMSD had a longstanding relationship with Sedgwick / Marsh and, under the circumstances of this case, was entitled to rely upon the expertise and competence of its agent that the steps necessary to secure the requested coverage would be taken. The 32nd Street address was within the vicinity of the Lincoln Creek parcel, and thus it was reasonable for MMSD, specifically its Risk Management Coordinator, Glinda J. Loving, who was admittedly unfamiliar with the precise boundaries of the Lincoln Creek parcel, to conclude, especially since Sedgwick / Marsh did not respond, that this was the address assigned for the Lincoln Creek parcel.

The slightly more difficult question is whether its agent, Sedgwick / Marsh, believed that it had obtained coverage. Unlike MMSD, Sedgwick / Marsh did receive some indication that additional information was needed before AISLIC would add Lincoln Creek as a covered location. However, as is discussed above, this communication was equivocal and certainly did not inform Sedgwick / Marsh that coverage was not and would not be provided for the Lincoln Creek parcel.

The relevant question becomes, after the policy was issued, did Sedgwick / Marsh still reasonably believe that the 4830 N. 32nd Street address represented the Lincoln Creek parcel?

11

Weighing on the side that Sedgwick / Marsh did not believe that this address represented the Lincoln Creek parcel is the fact that Sedgwick / Marsh requested an amendment of the policy to replace the 32nd Street address with "Lincoln Creek from Silver Springs to River Mile Roads," (Ex. 53A), a description that all parties agree does not accurately describe the Lincoln Creek parcel. If Sedgwick / Marsh believed that 4830 N. 32nd Street stood for the Lincoln Creek parcel, why would it request that the policy be amended? Reading the entire memorandum from Sedgwick / Marsh to Crump provides the court with its answer. The memorandum reads: "In looking this policy over again, the address for Location 5 should read Lincoln Creek from Silver Springs to River Mile Roads. Please have this amended. Thank you." (Ex. 53A).

Sedgwick / Marsh was not seeking to change what it believed to be the covered location. Sedgwick / Marsh was simply seeking to amend the policy to provide what it believed was a more accurate description of the Lincoln Creek parcel. Thus, rather than indicating that Sedgwick / Marsh thought that the 4830 N. 32nd Street address did not insure Lincoln Creek, the entire gist of the memorandum corroborates MMSD's contention that it did, in fact, believe that coverage had been obtained for the Lincoln Creek parcel, but it was providing a more complete identification, as previously requested. If Sedgwick / Marsh thought that Lincoln Creek was not covered, despite the many communications between Sedgwick / Marsh and Crump on this issue and Crump's prior assurances that Lincoln Creek was an insured location, it surely would have been more emphatic and inquisitive as to how and why this seemingly random new location was added to the policy in place of the location that they had all previously agreed would be covered. Thus, the court concludes that MMSD has proven by clear and convincing evidence that both it and its agent, Sedgwick / Marsh, believed that coverage had been obtained for the Lincoln Creek parcel.

The court next turns to the question of whether there is clear and convincing evidence that Crump believed that coverage was provided for the Lincoln Creek parcel. On this question, the court concludes that MMSD has failed in its burden of proof.

It is plausible that Crump believed that 4830 N. 32nd Street was the address of the Lincoln Creek parcel. AISLIC had repeatedly requested an address for the Lincoln Creek parcel. And suddenly, in place of "Lincoln Creek" on the policy, an address appears. Although Crump did not provide this address to AISLIC, it is certainly conceiveable that AISLIC may have undertaken its own investigation, for example conducting a phone survey with MMSD engineers, and obtained the address for the parcel. This would all be plausible, and perhaps convincing, were it not for Exhibit 42A.

In Exhibit 42A, Matt Henry of AILSIC clearly informs Crump that AISLIC will not be insuring "Lincoln Creek" and will instead provide coverage for separate parcel located at 4830 N. 32nd Street. In this letter, Matt Henry writes, "The above captioned policy will provide coverage for the following sites which are operated by MMSD." The four sites that appeared on all prior documents are listed but as the fifth site is "We believe MMSD has a location at 4830 N. 32nd Street in Milwaukee that if still in their control we will add to the policy. Please advise." With respect to Lincoln Creek, Matt Henry writes:

> It seems that coverage for the listing known as Lincoln Creek would have to be provided by a CPL project policy. The information provided indicates that the MMSD is in the midst of a multi year project which includes the following activities along Lincoln Creek:
>
> -       channel improvements
> -       storm water detention basin construction
> -       widening & deepening of the channel
> -       excavation, bridge replacement and revegetation
> -       other associated activities
>
> Please advise what we should [sic] as respect the Lincoln Creek project.

Case 2:05-cv-01352-AEG   Filed 01/20/09   Page 13 of 19   Document 282

(Ex. 42A.)

The letter is unequivocal—Lincoln Creek is not covered under the current policy and 4830 N. 32nd Street is a separate property. Thus, it is impossible for MMSD to prove by clear and convincing evidence that Crump reasonably believed that Lincoln Creek was a covered location under the policy. As such, reformation based upon a theory of mutual mistake of the parties is not supported by the evidence.

**Indemnification / Contribution**

AISLIC's third-party complaint against Crump seeks indemnification or contribution from Crump for any costs it would be obligated to pay should reformation be found. Having concluded that reformation is appropriate, it is necessary to determine whether AISLIC is entitled to indemnification or contribution.

AISLIC does not contend in its complaint, nor has the court received evidence to indicate, that there was a contract between AISLIC and Crump requiring contribution or indemnification. Absent a contract, claims for contribution and indemnification are equitable in nature, see, e.g., Brown v. LaChance, 165 Wis. 2d 52, 63, 477 N.W.2d 296, 302 (Ct. App. 1991); Wagner v. Daye, 68 Wis. 2d 123, 125, 227 N.W.2d 688, 689 (1975); see also Aetna Casualty & Sur. Co. v. Chicago Ins. Co., 994 F.2d 1254, 1257 (7th Cir. 1993), and therefore the jury's verdict on these questions was advisory.

> Unlike contribution where liability is shared, indemnity is a principle that "shift[s] the loss from one person who has been compelled to pay to another who on the basis of equitable principles should bear the loss." Kutner v. Moore, 159 Wis. 2d 120, 126, 464 N.W.2d 18, 20 (Ct. App. 1990). [A] right of indemnity has been said to exist whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join. Kjellsen v. Stonecrest, Inc., 47 Wis. 2d 8, 11-12, 176 N.W.2d 321, 323 (1970). Here, there is no contractual right of indemnification. Thus, any right to indemnification must be based on equity. The two basic elements of equitable indemnity are the payment of damages and lack of liability.

14

<u>Brown</u>, 165 Wis. 2d at 64, 477 N.W.2d at 302.

Were it not for Crump's mistakes, as previously discussed, MMSD would not be entitled to reformation. In failing to communicate its principal's concerns, Crump failed to reasonably execute its responsibilities as AISLIC's agent. Accordingly, Crump shall indemnify AISLIC for the costs it must expend to compensate MMSD for its claim.

**Legal Claims**

Having concluded that MMSD is entitled to the equitable relief of reformation, the court turns now to the parties' legal claims. Unlike the parties' underlying equitable claims, questions of coverage and the amount of loss are legal questions and on these questions, the court must accept the jury's verdict as binding. The jury determined that the amount of MMSD's clean-up costs related to the identification of a pollution condition on the Lincoln Creek parcel amounted to $404,148.51. This is a reasonable conclusion in light of the evidence. AISLIC and Crump argued, and the jury concluded, that certain of MMSD's claimed costs were inherent in its flood plain lowering project, and thus not compensable as clean-up costs incurred as a consequence of the need to remediate the pollution condition. This amount must then be reduced by the amount of MMSD's deductible, which in this case is $100,000.00, (Ex. 45B), and accordingly, the maximum MMSD is entitled to receive is $304.148.51.

Finally, AISLIC and Crump attempted to persuade the jury that coverage should be denied based upon the policy's exclusion of pollution conditions known by MMSD prior to the inception date of the insurance policy and not disclosed on the insurance application. (<u>See</u> Ex. 45B at 6.) The jury reasonably rejected this contention. Any contrary conclusion would be difficult for the court to sustain. There is no evidence to indicate that, as of February 25, 1999, the inception date of the policy, (Ex. 45B), MMSD knew of any pollution condition that it did not disclose on its application, (<u>see</u> Ex. 39B). MMSD specifically answered "Yes" when asked if was aware of any pre-existing

15

pollution conditions on any property is sought coverage for, and directed AISLIC to the "Phase I Study for Lincoln Creek." (Ex. 39B.) There is no evidence to indicate that at this time, MMSD had any further knowledge of potential contamination that was not contained in the Phase I report.

To the extent that the argument may be made that the jury's verdict on these legal questions should be regarded as only advisory, the court adopts the jury's verdict as its own. The evidence demonstrated that certain of MMSD's claimed costs were not incurred solely as a result of its removal of the pollution condition. The jury's careful consideration and analysis of MMSD's costs, notably going so far as to request that Exhibit 75B, the spreadsheet of MMSD's costs, be enlarged so it was easier to read, persuades this court to accept its advice. Finally, as noted above, the court has no doubt that were this matter tried without a jury, the court would have independently reached the same conclusion as the jury.

**Set-Off**

As a final matter, there is the question of whether any amount MMSD shall receive from AISLIC should be set-off by any amount MMSD received when it settled its claims against Sedgwick / Marsh. Following trial, AISLIC suggested that MMSD disclose the amount of the settlement in an effort to expedite the post-trial process. (Docket No. 273.) MMSD has responded that it disputes that any set-off is appropriate, and that any argument regarding set-off should be raised post-judgment. (Docket No. 279.)

The court disagrees with MMSD and therefore shall order MMSD to file, under seal, either a copy of the settlement agreement between MMSD and Sedgwick / Marsh or an affidavit of counsel indicating the amount of consideration that MMSD received in exchange for dismissing its claim against Sedgwick / Marsh.

Although the court has not identified any case from within Wisconsin that directly addresses the question presented here, it is well-established that an insured pursuing a claim against an

insurance agent for negligence as well as a claim against an insurer for reformation, is entitled to recover only once. See, e.g., Scheideler v. Smith & Associates, Inc., 206 Wis. 2d 480, 487, 557 N.W.2d 445, 448 (Ct. App. 1996); Appleton Chinese Food Service, Inc., v. Murken Insurance, Inc., 185 Wis. 2d 791, 806-08, 519 N.W.2d 674, 679 (Ct. App. 1994); Trible, 43 Wis. 2d at 184-85, 168 N.W.2d at 155; see also Hause v. Schesel, 42 Wis. 2d 628, 635-36, 167 N.W.2d 421, 425 (1969).

Two cases are most helpful to the court in resolving the present question. In Appleton Chinese Food Service, Inc., v. Murken Insurance, Inc., 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994), the plaintiff insured filed suit against its insurance agent and insurer alleging that it was entitled to full replacement cost of its building destroyed by fire rather than merely the actual cash value coverage listed on the policy. The insured settled its reformation and negligence claims against the insurer for $2,000.00 and proceeded to trial on its negligence claim against its insurance agent. Applicable here, the court awarded the insured "$140,000 minus the deductible and actual cash value settlement they had already received. Id. at 799, 519 N.W.2d at 676. The Court of Appeals held that the insured's pretrial settlement with the insurer did not bar recovery under the doctrine of election of remedies. The court noted that in recovering only $2,000 of its more than $100,000 in damages, the insured was "not unjustly enriched by recovering the remainder of their damages in their action against [the insurance agent]." Id. at 807, 519 N.W.2d at 679.

Appleton Chinese Food Service is not directly on-point with the present case since the plaintiff insured also pursued a negligence action against its insurer. In the present case, the plaintiff settled with one defendant regarding an entirely distinct cause of action (negligent misrepresentation) while proceeding to trial against another defendant on a separate cause of action (reformation).

The facts in Scheideler v. Smith & Associates, Inc., 206 Wis. 2d 480, 557 N.W.2d 445 (Ct. App. 1996) are more complex, but for the purpose of this case, the Court of Appeals determined

Case 2:05-cv-01352-AEG   Filed 01/20/09   Page 17 of 19   Document 282

that since the insured had obtained full relief from settlement with the insurance company, no further claims for relief arising out of the accident could be pursued. The court prohibited the insurance company from proceeding with the insured's assigned claims against the insurance agent since that would have the effect of allowing the insured to recover twice.

The Scheideler court discussed the limitations on a plaintiff's recovery in such a situation:

> [A]n insured may sue the insurance agent for negligence and for breach of contract for failing to obtain the insurance requested. Although an insured may initially pursue both a reformation claim against the insurer and claims against the agent as alternate theories of recovery, the insured may not recover against the agent if the insured obtains a judgment against the insurer under the reformed policy. Similarly, if the insured recovers for the agent's failure to procure the coverage requested, the insured cannot also recover from the insurance company under the reformed policy.

Id. at 487, 557 N.W.2d at 448 (internal citations omitted).

While neither of these cases is directly on point, this court finds the Court of Appeals' discussions to be helpful and insightful. It is clear that under Wisconsin law, a party is entitled to but one recovery for a loss. Although MMSD presented two distinct causes of action, there was only a single loss. As evidenced by it complaint, MMSD sought to recover the same loss from different parties on different legal theories. Principles of equity and simple fairness preclude this court from entering any judgment that would permit MMSD to recover more than its loss. The jury has conclusively determined that MMSD's loss to be $404,148.51. It is undisputed that MMSD has a $100,000 deductible. Accordingly, the full amount of MMSD's recoverable loss is $304.148.51. From this amount, any monies MMSD received from Sedgwick / Marsh must be deducted.

**IT IS THEREFORE ORDERED** that, in accordance with the provisions set forth below, judgment shall be entered in favor of MMSD and against AISLIC with respect to MMSD's claim for reformation against AISLIC.

- The insurance policy is hereby reformed to include coverage for the costs MMSD incurred remediating the pollution condition on the Lincoln Creek parcel.

- These pollution remediation costs totaled $404,148.51.

- Accordingly, AISLIC shall pay to MMSD $404,148.51, less MMSD's $100,000.00 deductible and less the amount MMSD received from dismissed defendant's Sedgwick / Marsh.

**IT IS FURTHER ORDERED** that, in accordance with the provisions set forth below, judgment shall be entered in favor of AISLIC and against Crump with respect to AISLIC's claim for indemnification against Crump.

**IT IS FURTHER ORDERED** that within **3 days** of the entry of this order, MMSD shall submit, under seal, either a copy of its confidential settlement between MMSD and Sedgwick / Marsh or an affidavit of counsel indicating the amount of any consideration MMSD received from Sedgwick / Marsh as a result of the settlement. Upon receipt of appropriate documentation of the settlement, the court shall instruct the Clerk to enter judgment.

Dated at Milwaukee, Wisconsin this <u>20th</u> day of January 2009.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge
